UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: MARK VAN KEHRBERG,

      Debtor.
_____/

STUART A. GOLD, Trustee,

      Appellant,

v.

BARBARA VAN KEHRBERG,

      Appellee.
_____/

Civil Case No. 20-10774
Honorable Linda V. Parker

Bankr. Case No. 18-51817
Adv. Pro. No. 18-04543
Honorable Maria Oxholm

## OPINION & ORDER

This matter is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Michigan, the Honorable Maria Oxholm presiding. Appellant Stuart A. Gold, Trustee, appeals Judge Oxholm's decision granting Appellee Barbara Van Kehrberg's Motion for Summary Judgment on all counts, holding that the relevant land contract was void per the statute of frauds. For the reasons that follow, this Court affirms Judge Oxholm's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2018, Debtor Mark Van Kehrberg ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy

Code.  (ECF No. 5-2.)  Appellant Stuart A. Gold ("Trustee") is the trustee of Debtor's bankruptcy estate.  Appellee Barbara Van Kehrberg ("Appellee") is Debtor's mother.

Pursuant to an October 17, 1995 quit claim deed, Appellee and all of her children—Debtor, Catherine Schweihofer, Dion Van Kehrberg, and Vern Van Kehrberg—became joint tenants of a commercial property located in Marysville, Michigan ("Property").  (ECF No. 5-26 at Pg. ID 1385.)  Appellee testified that Debtor started operating Blue Water College of Cosmetology, Inc. d/b/a Salon Professional Academy ("Blue Water College") at the Property in 1997.  (ECF No. 5-27 at Pg. ID 1391.)  Over the next ten years, Appellee and Debtor secured mortgages to finance construction and improvements on the Property.  (ECF No. 5-25 at Pg. ID 1367-69, 1373-74; ECF No. 5-28; ECF No. 5-29; ECF No. 5-30; ECF No. 5-31.)

On January 3, 2007, Appellee and Debtor signed a land contract ("Land Contract") prepared by Attorney Ralph Musilli, who jointly represented them. (ECF No. 5-27 at Pg. ID 1393; ECF No. 5-32.)  During his deposition, Musilli suggested that the intent of the Land Contract was for Debtor to acquire all of the interest in the Property.[1]  (ECF No. 3 at Pg. ID 443.)  None of the other co-

---

[1] During her deposition, Appellee could not recall why she and Debtor wanted Debtor to purchase the Property via Land Contract.  (ECF No. 5-27 at Pg. ID 1393.)  Debtor testified that Rosenbaum, Rollins & Olah, P.C., the firm who

2

owners—specifically, Catherine Schweihofer, Dion Van Kehrberg, and Vern Van Kehrberg—signed the Land Contract. According to Trustee, the purchase price was satisfied upon execution of the Land Contract based upon the outstanding mortgage debt on the Property. (*See* ECF No. 5 at Pg. ID 1020.)

In order for Appellee to perform under the Land Contract and deliver title to the Property to Debtor, Musilli also prepared a quit claim deed to remove all of Appellee's children off title to the Property ("Quit Claim Deed"). (ECF No. 3 at Pg. ID 443; ECF No. 5-33.) On June 1, 2007, Debtor and all of his siblings executed and delivered the Quit Claim Deed to Appellee. (ECF No. 5-33.) The Quit Claim Deed was recorded on June 6, 2007, and the Land Contract was recorded on September 6, 2007. (ECF Nos. 5-32, 5-33; ECF No. 5-34 at Pg. ID 1473.)

Musilli testified that, to effectuate Appellee's and Debtor's intent, he did not believe it was necessary to have the Quit Claim Deed signed before the Land Contract was signed because the Quit Claim Deed was recorded before the Land Contract was recorded. (*See* ECF No. 5-34 at Pg. ID 1473-74.) Appellee testified that she knew little to nothing about how or why the Quit Claim Deed was prepared and executed but believed that, despite the execution of the Quit Claim

---

prepared his 2007 and 2008 federal individual income tax returns, suggested the transaction over concerns of "federal monies coming in and how the government looked at it." (ECF No. 5-25 at Pg. ID 1375-76.)

3

Deed, Debtor had rights under the Land Contract as buyer. (ECF No. 5-27 at Pg. ID 1398-99.) Dion Van Kehrberg, Catherine Schweihofer, and Vern Van Kehrberg testified that they were unaware of the Land Contract's existence when they signed the Quit Claim Deed. (ECF Nos. 5-35, 5-36, 5-37.)

In the years following the recordation of the Land Contract and Quit Claim Deed, Debtor continued his possession and management of the Property. According to Trustee, Debtor's federal income tax returns reflect receipt of rental income and substantial tax benefits associated with ownership of the Property; Appellee signed and delivered a Property Transfer Affidavit to the City taxing authority under penalty of perjury in which she identified Debtor as the owner of the Property and the city thereafter sent the property tax bills to Debtor; and Debtor eventually satisfied the Land Contract by making all the mortgage payments on the Property.[2] (ECF Nos. 5-39, 5-40, 5-41, 5-42, 5-43.)

On July 25, 2013, Debtor signed a quit claim deed in order to convey his interest in the Property to himself and Appellee "for the sum of 0" and recorded the deed the next day. (ECF No. 5-47.) Trustee states that, during a bankruptcy discharge trial, Debtor testified he did not recall who prepared the deed, why it was

---

[2] Trustee points out that Appellee admitted in written response to discovery and in an email communication concerning discovery that Debtor's mortgage payments were made in lieu of Land Contract payments. (ECF No. 5 at Pg. ID 1024 (citing ECF Nos. 43, 44).)

4

prepared, or what it meant, but admitted he signed it for his mother's protection. (ECF No. 5 at Pg. ID 1025 (citing Def. T. pgs. 92-93).)

During the three years that followed, Debtor listed himself as title owner of the Property on mortgage documents in one instance (ECF No. 5-49) and, in another instance, Appellee and Debtor warranted that they were co-owners of the Property (ECF No. 5-51).  The latter instance took place on or around May 12, 2016, when Appellee and Debtor executed a future advance mortgage on the Property with Lapeer Bank ("Lapeer Bank Mortgage").  (*Id.*)  Blue Water College's operations terminated thereafter and, on December 1, 2016, Appellee individually entered into a commercial property lease with a new tenant.  (ECF No. 5-55.)  Appellee deposited the rental payments in a joint account she shared with Debtor's spouse, Margaret Catherine Johnson.  (ECF No. 5-56.)  Appellee and Johnson used a portion of the rental income to service the Lapeer Bank Mortgage, and retained the balance of the monthly lease payments to the exclusion of Debtor, and after the bankruptcy filing, the bankruptcy estate as well.  (ECF No. 5-58.)

On August 25, 2018, Debtor filed a voluntary bankruptcy petition.  On November 20. 2018, Trustee filed an adversary proceeding against Appellee seeking (i) a determination that "the Property constitutes property of the bankruptcy estate free and clear of any interest of [Appellee]" due to fraudulent transfer; (ii) a determination regarding "whether there is any balance owed

[Appellee] on the [L]and [C]ontract and, if so, approv[al] [of] the sale of [Debtor's] interest in the [P]roperty"; (iii) reformation of the Quit Claim Deed "to remove [] [D]ebtor as a grantor because it does not express the true intent of the parties" as evidenced by the Land Contract, which was intended to maintain Debtor's interest in the Property; (iv) rescission of the Land Contract and "return of all payments made to or for the benefit of [] [Appellee]"; and (v) a determination that Appellee breached the Land Contract by failing to deliver title to Debtor. (Third Amended Comp., ECF No. 3 at Pg. ID 204, 206-08.) Appellee subsequently filed a motion for summary judgment, arguing that the "Debtor had no interest whatsoever in the Property" because "Debtor and his siblings quit claimed all their interest in the Property to their mother" via the Quit Claim Deed and the "Land Contract was void *ab initio* per the Michigan Statute of Frauds because it was not signed by all of the property owners." (MSJ, ECF No. 3 at Pg. ID 222.)

On March 12, 2020, the bankruptcy court issued an oral decision, stating that all of Trustee's claims were contingent upon a determination that the Land Contract was valid and that, as a result, Debtor had an interest in the Property subject to the Land Contract. (ECF No. 3-1 at Pg. ID 974.) But because the Land Contract was void *ab initio*, the bankruptcy court explained, summary judgment as to all counts was warranted. (*See generally* ECF No. 3-1.)

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). The bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 501 (6th Cir. 2010). This means the Court reviews the law independently and gives no deference to the conclusions of the bankruptcy court. *Myers v. IRS (In re Meyers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir. 1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).

## APPLICABLE LAW & ANALYSIS

Trustee argues that the bankruptcy court erred in seven ways when it granted Appellee's summary judgment motion. The Court takes each argument in turn.

First, Trustee contends that the bankruptcy court erred when it concluded that the statute of frauds voided the Land Contract. (*See* ECF No. 5 at Pg. ID

1031-33.) The Court disagrees. Michigan Compiled Law 566.108 states: "Every contract for . . . the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing." In *Forge v. Smith*, the Michigan Supreme Court stated that "[a]ll owners of jointly held property must sign a contract conveying an interest in the property; the absence of a signature by a co-owner renders the contract void." 580 N.W.2d 876, 881 (Mich. 1998) (citing *Fields v. Korn*, 113 N.W.2d 860, 861 (Mich. 1962).

No party disputes that Debtor's siblings were also owners of the Property when Appellee and Debtor signed the Land Contract on January 3, 2007 in order to convey ownership of the Property to Debtor. Yet the siblings never signed the Land Contract and there is no writing signed by the siblings authorizing Appellee to enter into the Land Contract with Debtor on their behalf. Because the Land Contract was not signed by all owners of the Property, it is void and Debtor did not receive any interest in the Property as a Land Contract vendee that can now be sold by Trustee.

Trustee argues that Appellee is barred from raising the statute of frauds defense because she signed the Land Contract. (ECF No. 5 at Pg. ID 1032.) Trustee also argues that the statute of frauds defense belongs to the siblings, not

8

Appellee. (*Id.*) Trustee does not point to any case that supports the notion that a party who signs the contract at issue may not raise the statute of frauds as a defense. Moreover, as Trustee concedes, "[t]he defense of the statute (of frauds) is a personal one available only to a party to the contract to which the statute is alleged to apply . . . ." *Hoehner v. W. Cas. & Sur. Co.*, 155 N.W.2d 231, 234 (Mich. Ct. App. 1967); (*see* ECF No. 5 at Pg. ID 1031). The parties to the Land Contract were Appellee and Debtor, thus the defense belongs to them.

Trustee further contends that Appellee "ratified" the Land Contract and accepted performance of the contract by Debtor, thereby rendering the statute of frauds defense inapplicable. (ECF No. 5 at Pg. ID 1033.) However where, as here, a contract is void at its inception, it is void *ab initio* and cannot be ratified by the subsequent acts of those who were without power to make a valid contract in the first instance. *Utica State Sav. Bank v. Village of Oak Park*, 273 N.W. 271, 274-75 (Mich. 1937) ("Because the contract here in suit was void *ab initio*, it could not be and was not validated by ratification . . . ."); *see also Torovich v. Oddo*, No. 342967, 2019 WL 1050068, at *2 (unpublished) (Mich. Ct. App. Mar. 5, 2019) (citing *Utica State*, 273 N.W. 271) ("[C]ontracts that are void *ab initio* may not be ratified. . . . Because plaintiff and Thomas owned the property as tenants by the entirety, the mortgage was void without plaintiff's signature. Plaintiff could not ratify the mortgage when it was unenforceable from its execution."); *McMahon*

9

*Helicopter Servs., Inc. v. Mid-W. Dev., L.L.C.*, No. 269982, 2007 WL 1828810, at *6 (Mich. Ct. App. June 26, 2007) (unpublished) ("[I]n light of the undisputed evidence that Midwest failed to sign the land contract . . ., plaintiffs' partial performance argument must fail.")

Second, Trustee contends that the Land Contract is not void because recording the Quit Claim Deed before the Land Contract "placed [Appellee] in a position to perform her duty . . . to deliver a deed under the subsequently recorded [L]and [C]ontract under Michigan's race notice system." (ECF No. 5 at Pg. ID 1037-38.) But Trustee points to no case supporting the conclusion that recording a void land contract at any particular point in time somehow renders the land contract valid. (*See generally* ECF No. 5 at Pg. ID 1037-38.) Indeed, the fact that the Quit Claim Deed was recorded, making Appellee the sole owner of the Property, before the Land Contract was recorded, purportedly to transfer Appellee's ownership interest to Debtor, does not change the fact that the Land Contract was void at its inception because all of the co-owners of the Property at the time it was executed did not sign the contract. Even if the recording of the Quit Claim Deed placed Appellee in a position to deliver the Property deed to whomever she wanted, the Land Contract did not establish an obligation to transfer ownership from Appellee to Debtor because, again, the contract was void.

Third, Trustee argues that Appellee waived the statute of frauds. (*See* ECF No. 5 at Pg. ID 1030-31.) The Court disagrees. The statute of frauds is an affirmative defense that must be raised in response to a pleading. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981); see Fed. R. Civ. P. 8(c)(1). "Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citation omitted). According to the Sixth Circuit, however:

> It is well established [] that failure to raise an affirmative defense by responsive pleading does not always result in waiver. S*ee, e.g., Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (quoting *Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)). *See also Charpentier*, 937 F.2d at 864 ("It has been held that a 'defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond.'") (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986) (quoting *Allied Chemical Corp. v. MacKay*, 695 F.2d 854, 855-56 (5th Cir. 1983)); *Mackay*, 695 F.2d at 855-56 ("Where the matter is raised in the trial court in a manner that does not

>           result in unfair surprise . . . technical failure to comply
>           precisely with Rule 8(c) is not fatal.") . . . .

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993), *as amended on denial of reh'g* (Aug. 31, 1993).

The parties do not dispute that Appellee failed to raise the statute of frauds defense in her Answer to the Complaint, Motion for Summary Judgment related to the Complaint, Answer to the Amended Complaint, or the Motion for Summary Judgment related to the Amended Complaint. (*See* 3/12/20 Hr'g Tr., ECF No. 3-1 at Pg. ID 978; Trustee Br., ECF No. 5 at Pg. ID 1030-31.) Instead, Appellee raised the defense for the first time in an unauthorized reply to Trustee's sur-reply when the second motion for summary judgment was before the bankruptcy court, as well as during the attendant oral argument. (*See* 3/12/20 Hr'g Tr., ECF No. 3-1 at Pg. ID 978; Trustee Br., ECF No. 5 at Pg. ID 1030-31.) Notably, the bankruptcy court did not consider the defense at that time and Trustee does not dispute this fact. (*See* 3/12/20 Hr'g Tr., ECF No. 3-1 at Pg. ID 978-79; Trustee Br., ECF No. 5 at Pg. ID 1030-31.) However, Trustee subsequently filed a Second Amended Complaint and, in her Answer, Appellee stated in several paragraphs that the Land Contract was void *ab initio* because it was not signed by all of the owners of the Property. (ECF No. 5-17 at Pg. ID 1231; ECF No. 3 at Pg. ID 211-19.) The bankruptcy court thereafter set a new discovery deadline, Appellee eventually filed a third motion for summary judgment, and the bankruptcy court extended the

deadline for Trustee to file a response so that Trustee could depose all parties to the Quit Claim Deed. (*See* ECF No. 3-1 at Pg. ID 979.) Because Trustee was permitted the opportunity to engage in additional discovery and subsequently respond to Appellee's statute of frauds defense, Trustee was not surprised or unfairly prejudiced and the Court finds that Appellee did not waive the defense. *See Moore*, 992 F.2d at 1445.[3]

Fourth, Trustee contends that Appellee is equitably estopped from asserting the statute of frauds defense to establish the invalidity of the Land Contract. According to Trustee:

> [B]ased upon the signed and recorded land contract, the Property Transfer Affidavit, the parties' federal tax returns and regulatory filings, bank loan applications, [D]ebtor's exclusive possession of the Property, [Appellee]'s silence over the following decade, the satisfaction of the balance due on the contract, and the July 25, 2013 [q]uit [c]laim [d]eed, [] [D]ebtor obviously believed he was a party to a valid contract that he performed, relied on, and satisfied.

(ECF No. 5 at Pg. ID 1034.)

"Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other

---

[3] The Court is unpersuaded by Trustee's attempt to distinguish *Moore*. (*See* ECF No. 5 at Pg. ID 1030-31.) Though *Moore* concerns the affirmative defense of fraud, fraud—like the statute of frauds—is just one of several affirmative defenses identified in Fed. R. Civ. P. 8(c)(1) and Trustee points to no case suggesting that the statute of frauds should be treated any differently than other listed affirmative defenses.

13

party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 597 N.W.2d 15, 22 (1999). "The doctrine of equitable estoppel has been applied to defeat the defense of the statute of frauds where a party has acted to his detriment in reliance on oral agreements or where application of the doctrine of equitable estoppel is necessitated by the facts." *Lakeside Oakland Development, L.C. v. H & J Beef Co.*, 644 N.W.2d 765, 770 (2002). Notably however, "[t]here can be no estoppel where one is not deceived or misled, but acts upon his own judgment and with knowledge of the facts." *Shean v. U.S. Fid. & Guar. Co.*, 248 N.W. 892, 894 (Mich. 1933) (citations omitted). As the Michigan Supreme Court has explained:

> [I]t is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and [], where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.

*Sheffield Car Co. v. Constantine Hydraulic Co.*, 137 N.W. 305, 315 (Mich. 1912).

Trustee's argument fails because, as it concerns the facts of the Land Contract, Debtor was in possession of the same information as Appellee. *Sisk-Rathburn v. Farm Bureau Gen. Ins. Co. of Mich.*, 760 N.W.2d 878, 881 (Mich. Ct. App. 2008) (finding equitable estoppel inapplicable where "the prejudiced party

had the same *access to* the true facts as the party to be estopped" and "the means to independently assess" (emphasis in original)). Moreover, the record does not suggest that Appellee was aware that the Land Contract was void, *see Brockway v. Hydraulic Power & Light Co.*, 141 N.W. 693, 696 (Mich. 1913) (holding that estoppel did not apply where "there is no evidence that complainants . . . had any notice or knowledge" of the facts the defendant claimed were withheld), or that Appellee had a better means than Debtor of ascertaining that the Land Contract was void, *Sisk-Rathburn,* 760 N.W.2d at 881. In addition, it does not appear that Debtor was destitute of convenient and available means of acquiring knowledge regarding the validity of the Land Contract. *Sheffield*, 137 N.W. at 315. And nothing in the record suggests that, in his Property-related business dealings, Debtor was not acting upon his own judgment as informed by his knowledge of the facts.[4] *Brockway*, 141 N.W. at 696 (holding that estoppel did not apply where "there is no evidence that complainants countenanced or encouraged the work being done").

---

[4] Trustee relies on two additional cases in support of its estoppel argument: *Watling v. Watling*, 339 N.W.2d 505 (Mich. Ct. App. 1983) and *KBD & Assocs., Inc. v. Great Lakes Foam Techs*., No. 321126, 2015 WL 4635021, at *1 (Mich. Ct. App. Aug. 4, 2015). However, both cases are distinguishable as they do not analyze estoppel as an exception to the statute of frauds defense in the real estate transaction context.

Fifth, Trustee argues that the Land Contract reflects Debtor's and Appellee's intent to preserve Debtor's interest in the Property and the failure to do so was a mutual mistake that should be corrected by reforming the Quit Claim Deed. (*See* ECF No. 5 at Pg. ID 1038-43.) Even assuming that this issue is ripe for decision on appeal (*see id.* at Pg. ID 1038), the Court is not persuaded by Trustee's arguments. As an initial matter, the Land Contract was void *ab initio*, so Debtor acquired no interest in the Property and, therefore, reformation of the Quit Claim Deed would not preserve this non-existent interest.

Moreover, as Michigan Courts have explained:

> A deed may be reformed because of the mutual mistake of the parties. *Potter*, *supra* at 407, 73 N.W.2d 844. But the party seeking reformation must prove the mutual mistake by "clear and satisfactory" evidence, "so as to establish the fact beyond cavil." *Crane v. Smith*, 243 Mich. 447, 450, 220 N.W. 750 (1928); *see also Stevenson v. Aalto*, 333 Mich. 582, 589, 53 N.W.2d 382 (1952) (stating that the burden is on the party seeking reformation and that the evidence "must be convincing and must clearly establish the right to reformation").

*Johnson Family Ltd. P'ship v. White Pine Wireless, LLC*, 761 N.W.2d 353, 362-63 (Mich. 2008). Trustee correctly points out that parol evidence is admissible to establish a mutual mistake. *Clark v. Johnson*, 183 N.W. 41, 43 (Mich. 1921). Here, Trustee has not provided clear and satisfactory evidence that all of the parties to the Quit Claim Deed intended to preserve Debtor's interest in the Property. The affidavits of Debtor and his siblings do not indicate that there was a mistake in the

16

Quit Claim Deed.  (ECF No. 3 at Pg. ID 949-56.)  Moreover, Trustee concedes that at the time Debtor's siblings signed the Quit Claim Deed, they did not know the Land Contract existed.  (ECF No. 5 at Pg. ID 1040.)  Surely, the siblings did not intend to preserve an interest they did not know existed.

It appears Trustee argues that the Quit Claim Deed should be reformed due to the mutual mistake of two of five parties to the Quit Claim Deed—specifically, Appellee and Debtor.  But, even assuming that Appellee and Debtor intended that Debtor would retain the interest in the Property after Appellee obtained ownership of the Property via the Quit Claim Deed, Trustee does not point to any case in which a Court has reformed a deed based on the specific intent of some, but not all, parties to the deed.  Accordingly, the Court will not rewrite the clear language of the Quit Claim Deed to effectuate such an end.

In footnote 13 of its brief, Trustee argues that the Quit Claim Deed should be reformed due to Debtor's unilateral mistake.  (ECF No. 5 at Pg. ID 1043 n.13.)

> A court may also, under certain circumstances, reform a contract on the basis of a unilateral mistake.  Michigan has long recognized that an agreement may be reformed because of a unilateral mistake that was induced by fraud.  *See Windham v. Morris*, 370 Mich. 188, 193, 121 N.W.2d 479 (1963).  However, fraud is not a necessary element of every action to reform an agreement on the basis of a unilateral mistake.  [The] [Michigan] Supreme Court has stated:
>
> "[I]f one party at the time of the execution of a written instrument knows not only that the writing does not

17

> accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention." [*Woolner v. Layne*, 384 Mich. 316, 318–319, 181 N.W.2d 907 (1970), quoting 2 Restatement Contracts, § 505, p. 973.]

*Johnson*, 761 N.W.2d at 363. Here, Trustee claims that "[Appellee] knew that the [] [Q]uit [C]laim [D]eed did not accurately express the intention of [] [D]ebtor." (ECF No. 5 at Pg. ID 1043 n.13). Yet Trustee points to no part of the record supporting this assertion.

Sixth, Trustee contends that the statute of frauds is not a defense to Trustee's claims for breach of contract or rescission. (ECF No. 5 at Pg. ID 1043-44.) Instead of developing this argument, Trustee discusses monetary damages. Because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," the Court need not discuss this argument further. *McPherson v. Kelsey*, 125 F. 3d 989, 995 (6th Cir. 1997).

Finally, Trustee argues that the bankruptcy court based its decision on incomplete findings of fact. (*See* ECF No. 5 at Pg. ID 1029.) Even if the bankruptcy court failed to consider certain record evidence—specifically, those concerning (i) "the purpose of the June 3, 2007 deed," (ii) "the timing of delivery and recordation of the instruments," (iii) "[D]ebtor's satisfaction of the [] [L]and [C]ontract," (iv) "[Appellee]'s admissions of [D]ebtor's [L]and [C]ontract payments and ownership interest," and (v) "[Appellee]'s federal tax return

positions representing the absence of an ownership interest in the Property" (ECF No. 5 at Pg. ID 1029)—the Court, after reviewing the entire record, is not left with the definite and firm conviction that the bankruptcy court's decision was in error.

## CONCLUSION

For the foregoing reasons, this Court holds that the bankruptcy court did not err in granting Appellee's Motion for Summary Judgment.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's March 12, 2020 Order is **AFFIRMED**.

**IT IS SO ORDERED**.

                                                         s/ Linda V. Parker
                                                        LINDA V. PARKER
                                                        U.S. DISTRICT JUDGE

Dated: February 22, 2021